S. Stewart CROSBY, Plaintiff-Appellant, Appellant,

v.

The BRADSTREET COMPANY, Defendant-Appellee, and

L. Lloyd Crosby, Appellee.

No. 60, Docket 27606.

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1962.

Decided Jan. 17, 1963.

Copal Mintz, New York City, for plaintiff-appellant.

Chester Bordeau, New York City (White & Case, New York City, on the brief), for defendant-appellee.

Jay Leo Rothschild, New York City, for appellee.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

Stanford Crosby [1] appeals from the denial by the United States District Court for the Southern District of New York, of a motion under Rule 60(b) of the Federal Rules of Civil Procedure to relieve him from an order entered on stipulation on July 8, 1933. The district judge

1. In 1933 Stanford Crosby was using the name S. Stewart Crosby.

was of the opinion that the equities required denial of the application as he was convinced "that the harm which will befall L. Lloyd Crosby if the relief sought is granted by far outweighs the benefits that may accrue therefrom to the plaintiff Stanford Crosby." We reverse.

Stanford Crosby and his brother, L. Lloyd Crosby, were indicted by a federal grand jury in 1928 for mail fraud (now 18 U.S.C. § 1341). At trial in 1930, Stanford Crosby was acquitted, but the jury disagreed as to Lloyd Crosby. Lloyd Crosby then pleaded guilty and was given a suspended sentence.

In 1932 The Bradstreet Company, now Dun & Bradstreet, published a credit report which stated that Stanford and Lloyd Crosby had been found guilty of fraud. At that time the two brothers were in business together. In the same year, Stanford Crosby commenced a libel action in the New York Supreme Court against The Bradstreet Company based on the published credit report, which action was removed to the United States District Court. The specific nature of the allegedly libelous statement and the relief sought is unknown as the complaint is unavailable. We do know, however, that Stanford Crosby was the sole plaintiff and Lloyd Crosby and others with whom the brothers were in business, were not parties to the action. On June 28, 1933 Stanford Crosby and Dun & Bradstreet entered into a stipulation wherein the action was settled. The defendant agreed to pay $300 and to "refrain from issuing or publishing any report, comment or statement either in writing or otherwise concerning [Stanford] * * * Crosby, the plaintiff herein, L. Lloyd Crosby [and others] * * * or concerning the business activities of any of the foregoing persons

* * *; whether present, past or future." On July 8, 1933 the district court signed an order on that stipulation which was filed on July 10.

Since 1933 plaintiff and his brother have severed business relations and they are now in competing businesses in the Pittsburgh area. Stanford Crosby desires a termination of the 1933 order, under Rule 60(b) (5) and (6) of the Federal Rules of Civil Procedure,[2] claiming that the absence of a listing by the well-known Dun & Bradstreet credit information company makes it difficult for him to get credit. Lloyd Crosby, on the other hand, alleges that Stanford Crosby's purpose is to destroy his business. The defendant, Dun & Bradstreet, opposes termination of the order unless its right to make reference to Lloyd Crosby in its statement about Stanford Crosby is protected.

██ In memorandum orders dated April 10, 1962, the district court denied plaintiff's motion. On May 11, 1962, 31 days later, in an ex parte proceeding, plaintiff received permission in the district court to file a notice of appeal out of time.[3] At the argument before this court, appellee Lloyd Crosby challenged our jurisdiction over the appeal. In an order filed November 14, 1962, we held that, under Rule 6 of the Federal Rules of Civil Procedure, it was "beyond the power of the district court to extend the time of the appellant to file its notice of appeal by ex parte order dated May 11, 1962, if the 30-day period had already expired." However, no file date was stamped on the order and we thought it quite possible that the orders had in fact not been entered by the clerk of the district court until April 11. Accordingly, under Rule 75(h), Federal Rules of Civil Procedure, we directed "that the district

2. "(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (5) * * * it is no longer equitable that the

judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

3. See Rule 73(a), Federal Rules of Civil Procedure.

court determine the correct date of the entry of the orders dated April 10, and that a supplemental record including these findings be certified and transmitted to this court." The district court has certified that the orders were deposited for filing and entry on April 11, 1962, and accordingly it is clear that the notice of appeal was filed within thirty days. We proceed to the merits.

The 1933 order was extremely broad in its terms. It restrained the defendant from publishing any report, past, present or future, about certain named persons. It is true that the order arose out of a libel action. But even assuming, contrary to authority, American Malting Co. v. Keitel, 209 F. 331 (2 Cir., 1913), that it is proper for a federal court to enjoin a libel, the order here in question was not directed solely to defamatory reports, comments or statements, but to "any" statements. In fact, from all that appears, it would seem that whatever The Bradstreet Company published in 1932 was not libelous as to Lloyd Crosby.

■ Lloyd Crosby contends that the order was entered on consent and that Bradstreet is bound by contract to refrain from publishing matter about him. We disagree. We are concerned with the power of a court of the United States to enjoin publication of information about a person, without regard to truth, falsity, or defamatory character of that information. Such an injunction, enforceable through the contempt power, constitutes a prior restraint by the United States against the publication of facts which the community has a right to know and which Dun & Bradstreet had and has the right to publish. The court was without power to make such an order; that the parties may have agreed to it is immaterial.

The order dated July 8, 1933 was in violation of the First Amendment to the Constitution, see Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75

L.Ed. 1357 (1931). Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) indicates that the First Amendment limits court action. The order was void, and under Rule 60(b) (4) of the Federal Rules of Civil Procedure, the parties must be granted relief therefrom.

In any event, there does not seem to be any equity in Lloyd Crosby's position since he requests the continuation of an injunction which should never have been entered in the first place.[4]

We reverse the order of April 10, 1962, with directions that the district court nullify the order of July 1933.

4. Appellant contends that Lloyd Crosby, appellee, has no standing to oppose this motion because he was not party to the action in 1933. In view of our disposition of the case we do not reach this question.