19-4197-cv
*SEC v. Romeril*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term 2020

(Argued:  February 19, 2021    Decided:  September 27, 2021)

Docket No. 19-4197-cv

———————————

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*v.*

BARRY D. ROMERIL,

*Defendant-Appellant,*

PAUL A. ALLAIRE, G. RICHARD THOMAN, PHILIP D. FISHBACH, DANIEL S. MARCHIBRODA, GREGORY B. TAYLER,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————

Before:    LIVINGSTON, *Chief Judge*, AND CHIN AND BIANCO, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Cote, *J.*), entered November 18, 2019, denying defendant-appellant's motion pursuant to Federal Rule of Civil Procedure 60(b)(4) for relief from judgment. In 2003, the Securities and Exchange Commission brought a civil enforcement action against defendant-appellant (and others) alleging securities fraud. To resolve the matter, defendant-appellant consented to the entry of a final judgment against him and agreed, *inter alia*, not to deny any of the factual allegations of the complaint. Almost sixteen years later, he sought to invalidate the judgment on the basis that it incorporated a "gag order" that violated the First Amendment and his right to due process. The district court denied the motion, and defendant-appellant appeals.

AFFIRMED.

------------------------

JEFFREY A. BERGER, Senior Litigation Counsel, *for* Robert B. Stebbins, General Counsel, and Michael A. Conley, Solicitor, Securities and Exchange Commission, Washington, D.C., *for Plaintiff-Appellee.*

MARGARET A. LITTLE, Senior Litigation Counsel (Kara Rollins, Litigation Counsel, *on the brief*), New Civil Liberties Alliance, Washington, D.C., *for Defendant-Appellant.*

Paul R. Niehaus, Kirsch & Niehaus PLLC, New York, New York, and Rodney A. Smolla, Wilmington, Delaware, *for Amici Curiae Alan Garfield, Burt Neuborne, Clay Calvert, Rodney Smolla, Reason Foundation, The Goldwater Institute, The Institute for Justice, and The Pelican Institute for Public Policy, in support of Defendant-Appellant.*

Helgi C. Walker (Brian A. Richman, *on the brief*), Gibson, Dunn & Crutcher LLP, Washington, D.C., *for Amicus Curiae The Competitive Enterprise Institute, in support of Defendant-Appellant.*

Brian Rosner, Carlton Fields, P.A., New York, New York, *for Amicus Curiae Americans for Prosperity Foundation, in support of Defendant-Appellant.*

---

CHIN, *Circuit Judge*:

Almost sixteen years after entering into a consent agreement with the Securities and Exchange Commission (the "SEC") to resolve a civil enforcement action against him, defendant-appellant Barry Romeril moved to set aside the judgment incorporating the agreement, alleging that it contained a "gag order" that violated his First Amendment and due process rights. The district court denied Romeril's motion both on the grounds that it was untimely and on the merits, concluding that he had failed to allege a jurisdictional defect or

3

violation of due process that would permit relief under Rule 60(b)(4) of the Federal Rules of Civil Procedure.

We do not reach the issue of the timeliness of the motion, for we agree with the district court that Romeril's motion fails on the merits because it does not allege a defect that would permit relief under Rule 60(b)(4). Accordingly, the district court's order denying the motion is AFFIRMED.

## *BACKGROUND*

### A. *The SEC's "No-Deny" Policy*

For many years the SEC has incorporated into its procedures governing the settlement of civil actions a rule barring defendants who enter into consent decrees from publicly denying the allegations against them. In 1972, the SEC announced that it would not approve agreements that allowed defendants to "consent to a judgment or order that imposes a sanction while denying the allegations in the complaint." 37 Fed. Reg. 25,224 (Nov. 29, 1972). This policy is codified at 17 § C.F.R. 202.5(e), which states as follows:

> The Commission has adopted the policy that in any civil lawsuit brought by it or in any administrative proceeding of an accusatory nature pending before it, it is important to avoid creating, or permitting to be created, an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur. Accordingly, it hereby announces its policy not to

4

permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings. In this regard, the Commission believes that a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations.

*Id*.

**B.**     *The Facts and Proceedings Below*

In 2002, Xerox Corporation ("Xerox") entered into a consent decree with the SEC settling claims that it had violated securities laws. While it neither admitted nor denied the SEC's allegations, it agreed to pay a civil penalty of $10 million and consented to an order enjoining it from future violations of securities laws.

On June 5, 2003, the SEC filed a civil enforcement action in the Southern District of New York pursuant to Section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), alleging that Romeril, the former Chief Financial Officer of Xerox, and other senior executives at Xerox violated securities laws from 1997 to 2000 by manipulating Xerox's reporting of earnings to the SEC and investors. Specifically, the SEC alleged that Romeril "allowed Xerox to file public financial reports with the [SEC] that contained information that was not in conformity with [Generally Accepted Accounting Principles] . . .

5

[and] failed to identify failures in Xerox's internal controls," and that he "engaged in other actions which caused the financial statements to be materially false and misleading."  J. App'x at 16-17.

Romeril settled with the SEC.  While represented by counsel, he entered into a consent agreement (the "Consent") in which he conceded the district court's jurisdiction over him and "the subject matter of th[e] action," and agreed, "[w]ithout admitting or denying the allegations of the complaint," J. App'x at 67, to pay more than $5 million in disgorgement, prejudgment interest, and civil penalties.[1]  He also agreed to certain injunctive relief.  The Consent contained the following provision:

> Defendant understands and agrees to comply with the [SEC]'s policy 'not to permit a defendant . . . to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint . . . .'  17 C.F.R. § 202.5.  In compliance with this policy, Defendant agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis.  If Defendant breaches this agreement, the [SEC] may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's:  (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation in which the [SEC] is not a party.

---

[1]     Romeril was one of six Xerox executives who entered into consent agreements with the SEC and agreed to pay a total of $22 million.

6

J. App'x at 70.

The parties presented the Consent to the district court, which then issued a Final Judgment (the "Judgment") on June 13, 2003. The Judgment incorporated the Consent "with the same force and effect as if fully set forth herein," and ordered Romeril to "comply with all of the undertakings and agreements set forth" in the Consent. J. App'x at 65.

On May 6, 2019, nearly sixteen years after the Judgment was entered, Romeril moved in the district court for relief from the Judgment pursuant to Federal Rule of Civil Procedure 60(b)(4). He argued that the Judgment was void because the provision barring public denials of the allegations against him -- in his words a "gag order" -- constituted a prior restraint that infringes his First Amendment rights and violated his right to due process. Specifically, Romeril argued that the provision deprived him of the right to "speak, write, or publish [his] account of the events leading to" his prosecution, to defend himself in the media, and to petition Congress and the SEC for securities law reform. J. App'x at 83. He contended further that he is unable "to exercise these rights of free expression" because the "gag order is

7

worded so vaguely and reaches so broadly . . . that [he is] unable to speak without fear of a reopened prosecution." J. App'x at 82-83.

Together with the Rule 60(b)(4) motion, Romeril submitted a proposed amended Consent. The proposed amended Consent differed from the original Consent in only one material respect -- it omitted the no-deny provision.

On November 18, 2019, the district court denied Romeril's motion on the grounds that the motion was untimely and that, on the merits, Romeril failed to allege a jurisdictional defect or violation of due process that would render the Judgment void for purposes of Rule 60(b)(4). In particular, the district court concluded that (1) Romeril had acknowledged the court's jurisdiction over him and the subject matter of the action, (2) he failed to state a violation of his due process rights because he had notice and an opportunity to be heard and executed the Consent and waived his right to trial while represented by counsel, and (3) his constitutional claims did not "implicate" the court's jurisdiction to enter the Judgment.

This appeal followed.

*DISCUSSION*

"[W]e review *de novo* a district court's denial of a Rule 60(b)(4) motion." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011).

**A.    *Applicable Law***

Rule 60(b)(4) authorizes courts to "relieve a party . . . from a final judgment" when "the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *Id.*; *see* 12 Moore's Federal Practice § 60.44[1][a] (2020) ("The concept of void judgments is narrowly construed.").

Rule 60(b)(4) applies only in two situations: "where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271; *see also Mickalis Pawn Shop*, 645 F.3d at 138 ("A judgment is void under Rule 60(b)(4) . . . if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due

9

process of law." (internal quotation marks and citation omitted)).[2] "A judgment is not void . . . simply because it is or may have been erroneous," and "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *Espinosa*, 559 U.S. at 270 (internal quotation marks and citations omitted). As for jurisdictional error, a judgment may be declared void for jurisdictional defect only "when there is a total want of jurisdiction and no arguable basis on which [the court] could have rested a finding that it had jurisdiction." *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (internal quotation marks and citation omitted).

**B.** *Application*

We conclude that the district court's order denying Romeril's Rule 60(b)(4) motion must be affirmed because he failed to show either a jurisdictional error or a due process violation within the meaning of the rule.[3] We consider

---

[2]     Romeril contends that Rule 60(b)(4) is not limited to these two situations, but he cites no authority for the proposition, and the settled law is to the contrary. *See Espinosa*, 559 U.S. at 271; *Mickalis Pawn Shop*, 645 F.3d at 138; *Herbert*, 341 F.3d at 190. He cites only *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir.), *cert. denied*, 373 U.S. 911 (1963), which, as we discuss below, pre-dates *Espinosa*, *Mickalis Pawn Shop*, and *Herbert* by many years and in any event does not require a different result.

[3]     A Rule 60(b) motion must also be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Because Romeril's motion fails on the merits, we need not decide whether a sixteen-year gap between a judgment and Rule 60(b) motion is a reasonable time. We note that "this Court has been exceedingly lenient in defining the term 'reasonable time,' with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123-24 (2d Cir. 2008) (internal quotation marks and citation omitted).

10

first Romeril's claim of jurisdictional error and second his claim of due process violations.

### 1. *Jurisdiction*

Romeril has not established "a total want of jurisdiction." To the contrary, the district court clearly had jurisdiction over both the subject matter, *see* 15 U.S.C. §§ 78u, 78aa; 28 U.S.C. § 1331, and his person. Indeed, in the Consent, Romeril "acknowledge[d] having been served with the complaint in this action, enter[ed] a general appearance, and admit[ted] the Court's jurisdiction over [him] and over the subject matter of this action." J. App'x at 67. Rather, relying principally on one case, *Crosby v. Bradstreet Co.*, Romeril argues that he is entitled to relief under Rule 60(b)(4) because the "gag order" was an unconstitutional prior restraint that violated the First Amendment and the district court therefore was "without power" to issue it. Appellant's Br. at 5-7.

As an initial matter, even assuming that Romeril is correct that the no-deny provision violates his First Amendment rights, his reliance on Rule 60(b)(4) is misplaced. Even if the district court somehow erred in incorporating the no-deny provision into the Judgment, the Judgment was not void "simply because it is or may have been erroneous." *Espinosa*, 559 U.S. at 270; *accord*

11

*Nemaizer v. Baker*, 793 F.2d 58, 65-66 (2d Cir. 1986) (judgment entered as result of "perhaps an erroneous exercise of federal jurisdiction" was not subject to collateral attack under Rule 60(b)(4)); *In re Texlon Corp.*, 596 F.2d 1092, 1100 (2d Cir. 1979) ("The financing order was within the parameters of the bankruptcy court's authority, '[a]nd even gross error in the decree would not render it void.'" (citation omitted)). Any legal error here was not jurisdictional, for the district court had both subject matter and personal jurisdiction; hence, relief under Rule 60(b)(4) was not available.

Moreover, we reject the claim that there was legal error, for the district court did not err in accepting a decree to which Romeril consented. The Judgment does not violate the First Amendment because Romeril waived his right to publicly deny the allegations of the complaint. A defendant in a civil enforcement action is not obliged to enter into a consent decree; consent decrees are "normally compromises in which the parties give up something they might have won in litigation and waive their rights to litigation." *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 295 (2d Cir. 2014) (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235 (1975)). A defendant who is insistent on retaining

12

the right to publicly deny the allegations against him has the right to litigate and defend against the charges. Romeril elected not to litigate.

In the course of resolving legal proceedings, parties can, of course, waive their rights, including such basic rights as the right to trial and the right to confront witnesses. *See Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987) ("[I]t is well settled that plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights."); *INS v. St. Cyr*, 533 U.S. 289, 321-22 (2001) ("Plea agreements involve a *quid pro quo* between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous 'tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.'" (citations omitted)). The First Amendment is no exception, and parties can waive their First Amendment rights in consent decrees and other settlements of judicial proceedings. *See United States v. Int'l Brotherhood of Teamsters*, 931 F.2d 177, 188 (2d Cir. 1991) (holding that union waived claim that restrictions in consent decree on publication of materials for union elections violated First Amendment

because it consented to provision in consent decree).[4]  To the extent Romeril had the right to publicly deny the SEC's allegations against him, he waived that right by agreeing to the no-deny provision as part of a consent decree.

Romeril relies on our decision in *Crosby*.  There, we held that the district court erred in denying a Rule 60(b) motion to vacate an order entered years earlier as part of the settlement of a libel action, on the ground that the district court was "without power" "to enjoin publication of information about a person, without regard to truth, falsity, or defamatory character of that information."  312 F.2d at 485.  We explained:

> Such an injunction, enforceable through the contempt power, constitutes a prior restraint by the United States against the publication of facts which the community has a right to know and which [the defendant] had and has the right to publish.  The court was without power to make such an order; that the parties may have agreed to it is immaterial.

---

[4]  *See also, e.g.*, *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1994) ("First Amendment rights may be waived" as part of settlement as long as that "waiver is knowing, voluntary and intelligent."); *In re George F. Nord Bldg. Corp.*, 129 F.2d 173, 176 (7th Cir. 1942) ("Certainly, one who has been a party to a proceeding wherein a consent decree has been entered and who has been a party to that consent, is in no position to claim that such decree restricts his freedom of speech.  He has waived his right and given his consent to its limitations within the scope of that decree."); *accord Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam) (rejecting claim that provision in employment agreement obligating employee to submit any proposed publication for prior review constituted unconstitutional "prior restraint on protected speech," where employee voluntarily entered into agreement); *Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc.*, 906 F.3d 253, 257 (2d Cir. 2018) (per curiam) ("parties are free to limit by contract publication rights otherwise available").

*Id*.

While Romeril's reliance on the decision, in light of this broad language, is understandable, *Crosby* does not control this case. First, it was decided more than fifty years ago, long before *Espinosa* and the other cases discussed above limited the grounds for relief under Rule 60(b)(4).[5] Second, *Crosby* is distinguishable, as the rights of non-parties were implicated by the prohibition on public comment at issue in the case.

Stanford Crosby ("Stanford") brought a libel action against Dun & Bradstreet ("D&B"), "the well-known . . . credit information company." *Id.* at 484. Stanford and D&B settled. Their settlement stipulation, which was so ordered by the district court, prohibited D&B from reporting not only about Stanford but also about his brother Lloyd Crosby ("Lloyd") as well as certain specified other individuals with whom Stanford and Lloyd had been in business. *Id.* The provision barred D&B "from issuing or publishing any report, comment or

---

[5]     We note that the movant in *Crosby* did not seek relief under Rule 60(b)(4). Rather, he moved under Rules 60(b)(5) and (6). As they existed then, subdivision (5) permitted a court to relieve a party from final judgment if "it is no longer equitable that the judgment should have prospective application," and subdivision (6) permitted a court to do so for "any other reason justifying relief from the operation of the judgment." *Crosby*, 312 F.2d at 484 n.2 (quoting Fed. R. Civ. P. 60(b)(5), (6)). The Court, however, apparently on its own initiative, relied on Rule 60(b)(4). *Id*. at 485.

15

statement either in writing or otherwise concerning" Stanford, Lloyd, and the other individuals, "or concerning the business activities of any of the foregoing persons[,] . . . whether present, past or future." *Id.* (internal quotation marks omitted).

Some thirty years after the case was settled, Stanford moved to terminate the order, apparently because the absence of a credit listing by D&B was making it difficult for him to get credit. The brothers had severed their business relations, however, and were competing against each other; Lloyd contended that Stanford's purpose in seeking to terminate the order was to "destroy his business," and thus he opposed the motion. D&B did not oppose termination as long as it could refer to Lloyd in its reports about Stanford. *Id.*

The Court reversed the order. Although the Court did not explicitly frame its reasoning in these terms, the disputed provision barred D&B from making statements not only about Stanford (the only plaintiff in the case), but also about Lloyd and other individuals who were not parties to the litigation that led to the order. In that sense, the district court lacked jurisdiction over these other persons, who were not before the court and likely had not had notice of the proceedings or an opportunity to be heard. *See Texlon Corp.*, 596 F.2d at 1099

16

("[A] judgment . . . is void . . . if the court that rendered it lacked jurisdiction . . . of the parties." (citation omitted)). Here, the Judgment affected only Romeril, who was before the court and had an opportunity to be heard.[6] Hence, *Crosby* does not control, and we agree with the district court that Romeril did not establish "a total want of jurisdiction" rendering the Judgment void.

### 2. *Due Process*

Romeril contends that his right to due process was violated in several respects: the "gag order" is unconstitutionally vague; the SEC lacked statutory authority to issue the "gag order"; the "gag order" silences him in perpetuity; and the "gag order . . . implicates the judiciary in violating the constitution." Appellant's Br. at 52. We are not persuaded.

---

[6] The SEC also argues that *Crosby* is distinguishable because the Court there relied on the rule that "a court in 'equity ha[s] no jurisdiction to enjoin a libel,'" and noting that the present case does not involve an injunction against a libel. Appellee's Br. at 13 (quoting *Am. Malting Co. v. Keitel*, 209 F. 351, 354 (2d Cir. 1913)); *see Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 612 (6th Cir. 2011) (holding that "*Crosby* rested on a unique *jurisdictional* issue that rendered the court entering the order without power to do so," citing general rule that court of equity will not enjoin publication of libel). We need not reach this argument, but we note that the Court in *Crosby* set aside the judgment even assuming that "it is proper for a federal court to enjoin a libel," and observed that the order in question was not directed solely at defamatory statements. 312 F.2d at 485.

First, the due process right implicated by Rule 60(b)(4) is the right to "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950)). As a general matter, there is no "denial of due process for purposes of Rule 60(b)(4) if the party seeking relief received actual notice of the proceedings and had a full and fair opportunity to litigate the merits." 12 Moore's Federal Practice Civil § 60.44[4]; *see Espinosa*, 559 U.S. at 276. The due process right implicated by Rule 60(b)(4) does not extend to the claims of due process asserted by Romeril here. Romeril had actual notice of the proceedings as well as a full and fair opportunity to litigate on the merits. He participated in the proceedings while represented by capable and experienced counsel.

Second, there is no merit in any event to Romeril's claims of a violation of due process, for he willingly agreed to the no-deny provision as part of a consent decree. While he waived certain rights, including the right to trial and the right to publicly deny the allegations against him, he eliminated the expense of further litigation and the risk of an adverse judgment, including

18

higher monetary penalties and judicial *findings* that he had violated securities laws. We see no basis for not enforcing the Consent and Judgment as written. *See Citigroup Glob. Mkts.*, 752 F.3d at 293 ("Our Court recognizes a 'strong federal policy favoring the approval and enforcement of consent decrees.'" (quoting *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991))). Romeril cannot complain now, on post-judgment, collateral review, that the provision violates his right to due process.

## *CONCLUSION*

For the reasons set forth above, the district court's order is AFFIRMED.

19