# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2022

Lyle W. Cayce
Clerk

No. 21-10985

Securities and Exchange Commission,

*Plaintiff—Appellee*,

*versus*

Christopher A. Novinger; ICAN Investment Group, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:15-cv-358

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

The defendants settled a civil enforcement action that the Securities and Exchange Commission ("SEC") brought against them for alleged securities violations. Following its standard policy, the SEC barred the defendants from denying that they engaged in the charged conduct as a condition of settlement (the "no-deny policy"). The parties executed consent agreements containing provisions to that effect and submitted them to the district court, which entered final judgments. Five years later, the defendants filed a motion under Rule 60(b)(4) and 60(b)(5) seeking relief

No. 21-10985

from the final judgments to the extent that they incorporated the no-deny policy. They argued that the no-deny policy violates their First Amendment and due process rights. The district court denied the motion, and the defendants appealed. For the reasons that follow, we AFFIRM.

## I. Facts & Procedural History

Since 1972, the SEC has prohibited defendants who settle civil enforcement actions without admitting guilt from publicly "denying the allegations in the complaint" filed against them. 37 Fed. Reg. 25,224 (Nov. 29, 1972). The SEC enacted this no-deny policy, which is codified at 17 C.F.R. 202.5(e), after determining that it was "important to avoid creating, or permitting to be created, an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur." *Id.* Under the policy, "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." *Id.*

In May 2015, the SEC filed a complaint against several defendants including Christopher A. Novinger and ICAN Investment Group, LLC, a company that Novinger formed and directed.[1] The SEC alleged that Novinger and a confederate fraudulently sold $4.3 million worth of securities by making false or misleading statements to Texas investors, pocketing nearly $515,000 in commissions. Novinger allegedly funneled some of this money through ICAN. The SEC claimed that their conduct violated the antifraud and registration provisions of the securities laws.

The defendants, through counsel, negotiated a settlement with the SEC and informed the district court that they had amicably resolved the case.

---

[1] Only Novinger and ICAN are parties to this appeal.

No. 21-10985

Pursuant to the settlement, the defendants each executed consent agreements that imposed monetary and injunctive relief. In the consent agreements, the defendants conceded the district court's "jurisdiction over [them] and over the subject matter of this action." In addition, the defendants acknowledged that they entered the consent agreements "voluntarily" and confirmed "that no threats, offers, promises, or inducements of any kind" caused their agreement.

The defendants also represented that they understood and agreed to comply with the SEC's no-deny policy. More precisely, the defendants agreed that, among other things, they "(i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis" and "(ii) will not make or permit to be made any public statement to the effect that [they do] not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that [they do] not deny the allegations." The consent agreement further provided that if the defendants breached the agreement, the SEC could "petition the [district court] to vacate the Final Judgment and restore this action to its active docket."

The parties submitted the consent agreements, along with proposed final judgments, to the district court for entry. The district court granted the motion and "issue[d] final judgments against all Defendants in the forms agreed upon by the parties." The final judgments reiterated that the defendants "consented to the [district court's] jurisdiction over [them] and the subject matter of this action" and that they "consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint []except as to jurisdiction." Finally, the final judgments referentially incorporated the consent agreements "with the same force and effect as if fully set forth herein" and stated that the defendants "shall

comply with all of the undertakings and agreements" established in those documents. The district court entered the final judgments on June 6, 2016.

Five years later, on June 17, 2021, the defendants filed a motion for relief from the judgments against them under Federal Rule of Civil Procedure 60(b)(4) and 60(b)(5). The defendants argued that the judgments were void to the extent that they incorporated the no-deny policy, which the defendants claimed violated the First Amendment and denied them due process. Allegedly, the no-deny policy prevents Novinger from "engag[ing] in truthful public statements concerning SEC's case against him and ICAN" for fear of having the case reopened. The district court denied the motion, concluding that the defendants failed to meet their burden under either Rule 60(b)(4) or 60(b)(5). The defendants timely appealed.

## II. Standard of Review

This court reviews de novo a district court's denial of a Rule 60(b)(4) motion to set aside a judgment as void. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003). "Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 296 (5th Cir. 2015) (quoting *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998)).

Rule 60(b)(5) motions, in contrast, "are directed to the sound discretion of the district court, and its denial of relief upon such motion will be set aside on appeal only for abuse of that discretion." *Id.* (quoting *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Texas v. Alabama-Coushatta Tribe of Tex.*, 918 F.3d 440, 446–47 (5th Cir. 2019) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en

banc)). This court reviews de novo "any questions of law underlying the district court's decision." *Id.* at 447 (quoting *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015)).

## III. Discussion

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," making it "an exception to finality." *Gonzalez v. Crosby*, 545 U.S. 524, 528–59 (2005). As relevant here, the rule authorizes a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" because "(4) the judgment is void" or "(5) . . . applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(4)–(5). The defendants challenge the district court's denial of their Rule 60(b) motion, contending that they are entitled to relief under Rule 60(b)(4) and 60(b)(5). We address their arguments in turn.

### *A. Rule 60(b)(4)*

The defendants first argue that they are entitled to Rule 60(b)(4) relief because certain defects rendered void the final judgments that the district court entered. "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citations omitted). A legal error, standing alone, does not render a judgment void. *Id.* Rather, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271; *see also Brumfield*, 806 F.3d at 298 ("An order 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or it acted in a

manner inconsistent with due process of law.'" (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir. 1984))).

### i. Jurisdiction

The Supreme Court has not "define[d] the precise circumstances in which a jurisdictional error will render a judgment void." *Espinosa*, 559 U.S. at 271; *see also Brumfield*, 806 F.3d 301 ("The Supreme Court . . . has not definitively interpreted this rule."). This court has previously held that "a Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a 'clear usurpation of power' or 'total want of jurisdiction.'" *Callon*, 351 F.3d at 208 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 64–65 (2d Cir. 1986)). Here, however, the parties agree that no jurisdictional error renders void the relevant judgments. As the defendants wrote in their appellate brief, "Novinger does not contest the [district] court's jurisdiction for SEC's prosecution of him under the securities laws." Moreover, the defendants repeatedly acknowledged the district court's personal and subject matter jurisdiction below in the consent agreements and agreed final judgments.[2] And even without these concessions, the district court had jurisdiction over the parties and the subject matter under the federal securities laws and federal question statute. *See* 15 U.S.C. §§ 77t(b), 78u(d)–(e), 78aa; 28 U.S.C.

---

[2] The district court considered these concessions, along with its own independent analysis, "an arguable basis for jurisdiction" that defeated the defendants' Rule 60(b)(4) motion to the extent that it asserted a jurisdictional defect. *See Espinosa*, 559 U.S. at 271 ("Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." (quoting *Nemaizer*, 793 F.2d at 65)). Because the defendants do not challenge the consent judgments on jurisdictional grounds, "[t]his case presents no occasion to engage in such an 'arguable basis' inquiry or to define the precise circumstances in which a jurisdictional error will render a judgment void." *Id.*

§ 1331. The defendants therefore must offer another basis for receiving relief under Rule 60(b)(4).

### ii. Due Process

Although the defendants concede that the district court had jurisdiction to enter the final judgments, they contend that the judgments are void under Rule 60(b)(4) based on purported due process violations. As the defendants put it, their due process claims "hinge on the non-voluntariness of an 'agreement' to an SEC-mandated gag and . . . consists of more than just notice and an opportunity to be heard." They assert that the SEC has denied them a fundamental due process right by penalizing them for attempting to "speak truthfully." The defendants also lodge numerous other purported due process violations, including that the no-deny policy is unconstitutionally vague, ultra vires, and lacks any time restriction.

The SEC responds that, despite their broad ranging allegations, the defendants have not identified a due process violation of the type that Rule 60(b)(4) contemplates. It notes that, under *Espinosa*, the due process violation must be one that "deprives a party of notice or the opportunity to be heard." 559 U.S. at 271. *Espinosa* further explained that the due process right that Rule 60(b)(4) implicates is the right to "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 272 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Finally, it observed that "jurisdictional and *notice failings* . . . define void judgments that qualify for relief under Rule 60(b)(4)." *Id.* at 273 (emphasis added).

Similarly, this court has held that "[i]f a court has both subject matter and personal jurisdiction," then "the 'only inquiry is whether the district court acted in a manner so inconsistent with due process as to render the

judgment void.'" *Callon*, 351 F.3d at 210 (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996)). This rule applies in "rare" circumstances "because due process in civil cases usually requires only proper notice and service of process and a court of competent jurisdiction." *Id.* Thus, the SEC argues that the defendants, who undoubtedly had notice of this matter below, failed to allege a relevant due process violation under Rule 60(b)(4).

We agree that the defendants have not alleged a due process violation of the type that Rule 60(b)(4) contemplates. To show otherwise, the defendants contend that it is an "all-too-common error" to "reduc[e] due process to notice and opportunity to be heard" where there would have been "no settlement" absent their capitulation to the no-deny policy. But this general assertion does not upend *Espinosa*'s holding that a relevant due process violation must "deprive[] a party of notice or the opportunity to be heard." 559 U.S. at 271. The defendants, represented by counsel, waived service in this case, answered the SEC's complaint, and litigated the case for nearly a year before proposing a settlement. The defendants then executed consent agreements, stipulating that they did so "voluntarily" and without "inducements of any kind." Because the defendants "received *actual* notice of the filing and contents of" the judgments, their due process rights were "more than satisfied." *Id.* (emphasis in original). In sum, "[t]he due process right implicated by Rule 60(b)(4) does not extend to the claims of due process asserted . . . here." *SEC v. Romeril*, 15 F.4th 166, 174 (2d Cir. 2021), *cert. denied sub nom. Romeril v. SEC*, No. 21-1284, 2022 WL 2203361 (U.S. June 21, 2022). Accordingly, the defendants are not entitled to relief under Rule 60(b)(4) for any purported due process violations.

No. 21-10985

### iii. First Amendment

The Supreme Court has rejected attempts "to expand the universe of judgment defects that support Rule 60(b)(4) relief" where parties are "[u]nable to demonstrate a jurisdictional error or a due process violation." *Espinosa*, 559 U.S. at 273. Yet that is exactly what the defendants seek to do. Specifically, they argue that the judgments are void because the district court lacked authority to issue them considering the First Amendment violations that allegedly flow from the no-deny policy. They assert a grab bag of First Amendment challenges against the no-deny policy. Allegedly, the policy, among other things, is a prior restraint, compels and restricts the content of speech, forbids truthful speech, and improperly conditions settlement on the renunciation of First Amendment rights. Given these alleged First Amendment violations, the defendants contend that the judgments incorporating the no-deny policy must be set aside under Rule 60(b)(4).

The defendants primarily rely on *Crosby*, 312 F.2d 483, a 59-year-old Second Circuit case that the defendants describe as "the seminal case on Rule 60(b)(4) voidness for violation of the First Amendment." In *Crosby*, a district court entered an agreed order enjoining a litigant from publishing statements about certain individuals. 312 F.2d at 484–85. The Second Circuit then held that the order was an unconstitutional prior restraint on speech that the district court was "without power to make" notwithstanding the parties' agreement. 312 F.2d at 485. Because the district court lacked authority to enter an order that violated the First Amendment, the Second Circuit declared the order "void" and granted relief from it under Rule 60(b)(4). *Id.* According to the defendants, *Crosby* justifies granting Rule 60(b)(4) relief here.

This argument is unavailing. To begin with, *Crosby* is an out-of-circuit case that does not bind this court. What is more, the Second Circuit recently

9

declined to apply *Crosby* in this exact context. *See Romeril*, 15 F.4th at 173 ("*Crosby* does not control this case."). Like the defendants here, the *Romeril* defendant sought Rule 60(b)(4) relief from an agreed judgment incorporating the no-deny policy because it allegedly violated the First Amendment. *Id.* at 168. In response to his reliance on *Crosby*, the Second Circuit stated that *Crosby* "was decided more than fifty years ago, long before *Espinosa* and . . . other cases . . . limited the grounds for relief under Rule 60(b)(4)." *Id.* at 173. It added that "*Crosby* is distinguishable, as the rights of non-parties were implicated by the prohibition on public comment at issue in the case." *Id.* "In that sense, the district court lacked jurisdiction over these other persons, who were not before the court and likely had not had notice of the proceedings or an opportunity to be heard." *Id.* at 174. In contrast, the judgment at issue in *Romeril* affected only the defendant, "who was before the court and had an opportunity to be heard." *Id. Crosby* was therefore inapposite. *Id.* Likewise, because the judgments binding the present defendants to the no-deny policy affect only them, *Crosby*—which, in any event, is nonbinding authority—does not help the defendants.

This court's opinions in *Brumfield*, 806 F.3d 289, and *Carter*, 136 F.3d 1000, are not to the contrary. The defendants argue that, in denying their motion for Rule 60(b)(4) relief, the district court adopted a cribbed view of *Espinosa* that this court rejected in *Brumfield*. In *Brumfield*, this court explained that *Espinosa* did not "definitively interpret[]" Rule 60(b)(4) as it relates to jurisdictional errors because the parties there, as here, agreed that the judgment at issue was jurisdictionally sound. 806 F.3d at 301 (citing *Espinosa*, 559 U.S. at 270). Emphasizing this statement, the defendants argue that *Brumfield* confirms that Rule 60(b)(4) relief is not limited to jurisdictional defects or due process violations implicating notice. The SEC counters that *Brumfield* did not break new ground in this court's Rule 60(b)

jurisprudence and instead merely "illustrate[s] when a judgment may be void for lack of jurisdiction."

The defendants read *Brumfield* too broadly. That decision expressly recognized that "a judgment is void under Rule 60(b)(4) only if the court lacked jurisdiction of the subject matter, or of the parties, 'or it acted in a manner inconsistent with due process of law.'" *Id.* (quoting *Williams*, 728 F.2d at 735). As explained above, no jurisdictional error renders the relevant judgments void. The defendants suggest, however, that *Brumfield* adopted an expansive view of "due process" authorizing them to challenge their judgments as void on constitutional grounds. But *Brumfield* granted Rule 60(b)(4) relief based on a jurisdictional defect, not a due process violation of the type that *Espinosa* sanctioned. The district court in *Brumfield* "retained continuing jurisdiction for the remedial purpose laid out in [an earlier] order, which was to prevent future state aid to discriminatory private schools." *Id.* at 298. Although the district court's continuing jurisdiction extended only to "the correction of the constitutional infirmity," the challenged order went "beyond correcting—and indeed ha[d] nothing to do with—the violation originally litigated in [the] case." *Id.* (quotation omitted). Accordingly, this court held that the challenged order was "void for lack of subject matter jurisdiction" because it exceeded "the scope of the district court's continuing jurisdiction." *Id.* at 291. Put simply, the opinion did not turn on a due process violation, and the defendants' reliance on *Brumfield* is therefore misplaced. *Cf. Matter of Novoa*, 690 F. App'x 223, 227 (5th Cir. 2017) ("*Brumfield* does not endorse the view that an order exceeding nonjurisdictional limits on a court's statutory authority is void.").

Additionally, the defendants make several passing references to *Carter*, 136 F.3d 1000. There, this court held that a consent judgment memorializing a settlement in a wrongful-death action brought by a mother on behalf of her minor child was void for Rule 60(b)(4) purposes. 136 F.3d at

11

1009. That was because she failed to comply with a Louisiana statute requiring her to obtain state-court approval before settling the minor's claim. *Id.* at 1008–09. The defendants offer *Carter* as an example of this court "setting aside [a] judgment[] in whole or in part for reasons other than a total want of jurisdiction." According to them, *Carter* "involved neither a jurisdictional defect nor a due process claim" and yet granted Rule 60(b)(4) relief. They also generally rely on language from *Carter* stating that Rule 60(b)(4) "should be construed in order to do substantial justice." 136 F.3d at 1007. The SEC implies in response that *Carter* is inconsistent with *Espinosa* and its progeny. To the extent that the cases are consistent, the SEC argues that they are distinguishable because *Carter* involved relevant due process issues.

*Carter* does not support granting Rule 60(b)(4) relief here. That case is best understood as involving a judgment rendered void by a due process violation: the mother's failure to follow applicable procedural safeguards before "compromising the claim of her son." 136 F.3d at 1008.[3] Accordingly, *Carter* and *Espinosa* are reconcilable. And to the extent that they are irreconcilable, *Espinosa*—which the Supreme Court decided a decade after this court decided *Carter*—controls. *See, e.g.*, *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) ("[T]his panel is bound by the precedent of previous panels absent an intervening Supreme Court case explicitly or implicitly overruling that prior precedent . . . ."). In either case, the defendants' claim for Rule 60(b)(4) relief fails.

Finally, the defendants also cite *Klapprott v. United States*, 335 U.S. 601 (1949), to support their argument that *Espinosa* did not "define[] the

---

[3] *See, e.g.*, 11 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 2862 n.11 (3d ed.) (including *Carter* in its discussion of voidness based on actions "inconsistent with due process of law").

entire universe of cases where relief is justified under Rule 60(b)(4)." In their view, *Klapprot* demonstrates that the Supreme Court has declared a judgment void for Rule 60(b)(4) purposes based on a district court's alleged lack of statutory power to act. They say that *Espinosa* did not implicitly overturn *Klapprot*, which predates *Espinosa* by sixty-one years. This argument is unpersuasive. As an initial matter, the defendants did not raise this argument either before the district court or in their opening appellate brief, making it arguably waived. *See Sindhi v. Raina*, 905 F.3d 327, 333 (5th Cir. 2018) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." (quotation omitted)); *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

In any event, *Klapprot* is consistent with *Espinosa*'s statement that Rule 60(b)(4) applies only where a judgment is either jurisdictionally or procedurally defective. *Espinosa*, 559 U.S. at 271. "The *Klapprot* case was a case of extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199 (1950). It concerned whether Rule 60(b)(4) afforded relief from a district court's entry of a default judgment depriving a naturalized citizen of his "citizenship without hearings or evidence." *Klapprott*, 335 U.S. at 602. Demonstrating the "unfairness" of the situation, the default judgment stripped the defendant of his citizenship even though he was "absent" and unrepresented by counsel. *Id.* at 610. Moreover, the government offered "no evidence," and "the only basis for action was a complaint containing allegations" that were "questionable from a procedural and substantive standpoint" and that were acquired "from looking at hearsay statements." *Id.* In other words, the judgment in *Klapprott* resulted from "a violation of due process that deprive[d] a party of notice or the opportunity to be heard," rendering it void. *Espinosa*, 559 U.S. at 271. As Justice Frankfurter recognized in dissent, "[t]he only possible provision on which an argument can be based

that citizenship cannot be canceled by a default judgment is the Due Process Clause of the Fifth Amendment." *Klapprott*, 335 U.S. at 627–28 (Frankfurter, J., dissenting) (rejecting the "suggestion" that a due process violation occurred). Thus, *Klapprott* and *Espinosa* are of a piece; neither supports the defendants' expansive reading of Rule 60(b)(4). It follows that the defendants are not entitled to relief under this provision of the rule based on any alleged First Amendment violations.[4]

### B. Rule 60(b)(5)

The defendants alternatively argue that they are entitled to relief under Rule 60(b)(5). That provision authorizes relief from a final judgment if, among other things, "applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). Rule 60(b)(5) does not provide relief "when it is no longer convenient to live with the terms of a [judgment]." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). Rather, it "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo*, 502 U.S. at 384). "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a [consent judgment]." *Rufo*, 502 U.S. at 385. The movant "bears the burden of establishing that changed circumstances warrant relief." *Horne*, 557 U.S. at 447.

The defendants assert that the judgments here should "be set aside as violating the public interest under Rule 60(b)(5)." They argue that retaining the no-deny policy in the judgments harms the public interest in two ways: (1) it eliminates "healthy criticism" of the SEC's tactics, cloaking the SEC's

---

[4] The Second Circuit reached the same conclusion in *Romeril*, 15 F.4th 166.

"expansion of powers" and its unfair settlement practices; and (2) it gives judicial approval to unconstitutional provisions, which inherently harms the public interest. The SEC responds that the defendants are not entitled to relief because they failed to identify any unexpected changes in the facts or law. The defendants do not address the SEC's arguments concerning this issue in their reply brief.

The district court correctly denied the defendants' Rule 60(b)(5) motion because the defendants have not shown that it has become "no longer equitable" to apply the judgment prospectively. FED. R. CIV. P. 60(b)(5). On appeal, the defendants have not attempted to demonstrate a significant factual or legal change that justifies relief, much less one that was unanticipated when they entered the consent judgments. Although the defendants argue that the terms incorporated into the judgments produce harmful effects, those are the terms to which they agreed. The defendants are not entitled to relief simply because "it is no longer convenient to live with [those] terms." *Rufo*, 502 U.S. at 383. Accordingly, the defendants failed to meet their "burden of establishing that changed circumstances warrant relief," *Horne*, 557 U.S. at 447, and the district court properly denied their motion as a result.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 21-10985

Edith H. Jones, *Circuit Judge*, joined by Duncan, *Circuit Judge*, concurring:

I am pleased to concur in my colleague's opinion denying relief on these defendants' post-judgment motions. I write to note that nothing in the opinion (or in the district court opinion, for that matter) approves of or acquiesces in the SEC's longstanding policy that conditions settlement of any enforcement action on parties' giving up First Amendment rights. 17 C.F.R. § 202.5(e). If you want to settle, SEC's policy says, "Hold your tongue, and don't say anything truthful--ever"—or get bankrupted by having to continue litigating with the SEC. A more effective prior restraint is hard to imagine. The defendants' brief informed us that a petition to review and revoke this SEC policy was filed nearly four years ago. New Civil Liberties Alliance, Petition to Amend (Oct. 30, 2018), available at http://bit.ly/2xfFD3Z. However, SEC never responded to the petition. Given the agency's current activism, I think it will not be long before the courts are called on to fully consider this policy.